# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

DONALD R. PEVIA,   *

Plaintiff   *

v.   *   Civil Action No. ELH-17-10

JEFFREY NINES, *et al.*,   *

Defendants   *

***

## MEMORANDUM OPINION

Plaintiff Donald R. Pevia, a self-represented inmate currently confined at the North Branch Correctional Institution ("NBCI"), filed a civil rights complaint against defendants Assistant Warden Jeffrey Nines, Lieutenant Thomas Sires, Sergeant William Leydig, and CO II Scott Beeman,[1] pursuant to 42 U.S.C. § 1983. He alleges that his right to Equal Protection was violated by defendants when he was prevented from ordering paintbrushes and all art supplies, while other inmates were permitted to order them. ECF 1; *see also* ECF 31. Plaintiff also filed a court directed supplement to the complaint. ECF 3.

Defendants have filed a motion to dismiss or, in the alternative, for summary judgment. ECF 21. The motion is supported by a memorandum (ECF 21-1)[2] (collectively, "Motion") and several exhibits.[3] Plaintiff opposes the motion. ECF 26; ECF 31; ECF 32.[4]

---

[1] The Clerk shall correct the spelling of defendant's name.

[2] Citations are to the court's electronic docket.

[3] Due to an unexplained error, the Declaration of Assistant Warden Nines was not docketed. Instead, Lt. Sires' declaration was docketed twice. ECF 21-3; ECF 21-5. Counsel for defendants corrected the error by docketing Nines' Declaration. ECF 29; ECF 29-1. Plaintiff was advised of the error and granted an additional twenty-one days to supplement his opposition to the Motion. ECF 30. Plaintiff filed a supplemental opposition. ECF 32.

No hearing is necessary to resolve these matters. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, defendants' Motion, construed as a motion for summary judgment, shall be granted.

**I. Background**

Lt. Thomas Sires is the supervisor regarding property and Officers William Leydig and C.O. II Scott Beeman run the property room and are responsible for verifying and processing inmate orders. ECF 3 at 2.

Plaintiff alleges that in December of 2015, after filing an administrative remedy, ARP No. 2237-15, regarding the denial of art supplies, he was approved to order paintbrushes. ECF 1 at 5. However, before placing the order, plaintiff was placed on disciplinary segregation. *Id*. On an unspecified date, Beeman asked plaintiff to sign off on his Inmate Grievance Office ("IGO") hearing concerning ARP No. 2237-15 because he could now get the paintbrushes. Later, Officer Durst brought plaintiff a sign off sheet regarding the grievance, which plaintiff signed. *Id*.

In May of 2016, after plaintiff had been released from disciplinary segregation, plaintiff

---

[4] Plaintiff has filed a "Motion for Summary Judgment" (ECF 26), which he supplemented. ECF 31. These submissions are, in reality, oppositions to defendants' Motion and shall be considered as such. Attached to ECF 26 is a "Notice of Harassment and Retaliation" wherein plaintiff attached a copy of an administrative remedy procedure ("ARP") he submitted after an incident on June 15, 2017. ECF 26-1 at 5-10. Plaintiff alleges that he was harassed when an officer came to his cell requesting documentation regarding this complaint. *Id*.

The ARP was investigated and dismissed after finding that the officer had in fact come to plaintiff's cell to investigate his claim regarding the paintbrushes at issue in this case. Plaintiff states that the officer came to take documents regarding the case.

Plaintiff has failed to specify what documents were taken or how he was otherwise harmed by the officer's investigation of his claim. As such, no action will be taken in regard to plaintiff's "notice" and the claims, first presented in his opposition, shall not be further considered here. *See Cutrera v. Board of Sup'rs of Louisiana State University*, 429 F.3d 108, 113-14 (5th Cir. 2005) (claim which is not raised in the complaint, but is raised only in response to a motion for summary judgment, is not properly before the court); *Gilmour v. Gates, McDonald and Company*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Ware v. U.S. Bank Nat'l. Ass'n.*, 131 F. Supp.3d 573, 578 (S.D. Miss. 2015).

2

submitted an art catalog order that was denied with a notation that "paint brushes are not allowed." *Id*. at 5. Plaintiff resubmitted the order with a letter advising the property department that the paintbrushes had been approved in ARP No. 2237-15. *Id*. Once again. the order was denied. *Id*. Plaintiff resubmitted the order a third time, this time removing the request for paintbrushes. The order was again denied, this time with a note that he could not order art supplies if he was not enrolled in an art class. *Id*. at 6.

On May 25, 2016, plaintiff filed a new ARP, No. 1183-16, concerning the denial of art supplies. ECF 1 at 3. Having not received a timely response to the ARP, plaintiff filed another ARP, No. 1213-16, again complaining about the denial of art supplies. However, it was dismissed as repetitive to ARP 1183-16. ECF 1 at 3. Sometime that month, Sires came to plaintiff's cell and requested he sign off on ARP 1183-16, as the prison was making its own art supply list. *Id*. Plaintiff refused to do so. *Id*.

Plaintiff alleges that throughout this time other inmates housed on Max II were allowed to order art supplies and paintbrushes. *Id*. at 6; ECF 3 at 3. He indicates that inmates Doug Baker, Christopher Witcher, Michael Warner, and Richard Phelps were among those inmates. *Id*. Plaintiff claims that he was "intentionally and vindictively denied ALL art supplies." ECF 1 at 6 (emphasis in original); *see also* ECF 3 at 3.

In response to plaintiff's allegations, defendants explain that on October 29, 2015, plaintiff filed ARP NBCI-2237-15, alleging that Sgt. Harris and defendant Beeman denied him paintbrushes even though the property list permitted inmates in both general population and on administrative segregation to have paintbrushes. ECF 21-2 at 18-19. The ARP was investigated and it was determined that plaintiff's ARP was meritorious. He was advised as follows on December 29, 2015:

> An investigation revealed that according to the allowable inmate property matrix, all general population inmates and administrative segregation inmates are allowed to have 5 art brushes; however, the art brushes must be stored in an area determined by the facility which is located in the (Art Room) gym area. Keep in mind that to have access to your paintbrushes, you will need to send a request to gym Officer Hartman to be placed on a pass list.

ECF 21-2 at 18.

From January 3, 2016 through April 25, 2016, and from January 12, 2017 to June 20, 2017, plaintiff was housed on disciplinary segregation. ECF 21-2 at 46. Plaintiff was not authorized to purchase or possess paintbrushes while on disciplinary segregation. ECF 21-6 (Leydig Decl.), ¶ 10; ECF 21-5 (Sires Decl.), ¶ 10.

The "Allowable Inmate Property Matrix" limits the type of property an inmate may possess both by the inmate's security level as well as whether the inmate is designated "General Population," "Administrative Segregation," or "Disciplinary Segregation." ECF 21-2 at 7. In 2016, plaintiff was designated "Max II," the highest security classification. *Id*. at 6. Max II inmates on disciplinary segregation are not permitted to possess "art brushes" or "art sets." *Id*. at 7. General population inmates are permitted to have five art brushes. However, the facility is responsible for determining where the brushes are stored. ECF 21-2 at 12.

As indicated, on May 25, 2016, plaintiff filed ARP NBCI-1183-16, alleging that he was denied art supplies and paint brushes. ECF 21-2 at 3-4. The ARP was dismissed by Acting Warden Jeff Nines, who found that because plaintiff was not enrolled in an art class that stored and provided paintbrushes during class, he was not entitled to order them. *Id*. Nines also noted that plaintiff could order the art set supplied by the commissary to keep in his cell or could obtain paintbrushes when he enrolled in the art class. *Id*. Plaintiff filed an appeal to the Commissioner (*id*. at 13) who found the ARP meritorious, stating that all general population inmates were permitted to have five art brushes, but the brushes must be stored in an area determined by the

4

facility. *Id*. at 12. Plaintiff had also filed a complaint regarding this issue with the IGO, which he subsequently withdrew. *Id*. at 29.

On May 30, 2016, plaintiff filed ARP NBCI-1213-16, alleging that the property room staff retaliated against him regarding the ordering of his art supplies. ECF 21-2 at 33-34. The ARP was dismissed as repetitive to ARP NBCI-1183-16. *Id.* at 33. On July 21, 2016, plaintiff's appeal to the Commissioner was dismissed for failure to follow the ARP coordinator's instructions, which had directed Pevia to resubmit the ARP, along with a copy of ARP NBCI-1183-16. *Id*. at 35, 39.

CO II Gurtler investigated plaintiff's claim that certain Max II inmates were approved to acquire art supplies, by reviewing the property records of inmates Doug Baker, Christopher Witcher, Richard Phelps, and Michael Warner. His Declaration is dated October 30, 2017. ECF 21-2 (Gurtler Decl.), at 1.

Gurtler's investigation revealed that inmate Doug Baker ordered a water color paint set on August 14, 2017. *Id.* ¶4. But, it did not contain paintbrushes. *Id*.

Plaintiff provided a sworn statement from Baker dated August 2, 2016. He avers that he is a Max II inmate and that he placed an art order during the same period as plaintiff from Walkenhorst. Baker's order was processed and he received his requests. He indicates he is not in an art class and has art supplies in his cell. ECF 26-1 at 4.

Records regarding inmate Christopher Witcher were reviewed dating back to January 1, 2015. They revealed no evidence that Witcher ever ordered paintbrushes. ECF 21-2 at 1, ¶ 5.

Plaintiff provided an affidavit from Witcher indicating: "In the same catalog order period Pevia placed his art catalog order. . . I placed one myself: Design Kneaded Eraser, Royal Essentials 16 pc sketching set, and Canson Jumbo sketch pad (9 x 12)." ECF 26-1 at 1. Witcher

5

indicates he received his order and he was not enrolled in an art class and used his art supplies in his cell. *Id*. An invoice dated May 12, 2016, from Walkenhorst indicates the items were shipped to Witcher at NBCI. *Id*. at 2.

Inmate Richard Phelps ordered water color pencils in June of 2016. ECF 21-2 at 1, ¶ 6. Phelps's records were also reviewed back to January 1, 2015. *Id*. There was no record indicating that he ordered paintbrushes. *Id*.

Inmate Michael Warner ordered paintbrushes that arrived in August of 2016. *Id*. ¶ 7. However, they were confiscated as contraband. *Id*.[5] There is no evidence the paintbrushes were ever returned to Warner. *Id*.

Defendant Leydig avers that he denied plaintiff's request for paintbrushes based on his understanding that there was no location in plaintiff's housing unit to store the art supplies. ECF 21-3 (Leydig Decl.), ¶ 6. When plaintiff resubmitted his request, without the request for paint brushes, Leydig then realized that plaintiff was attempting to order the supplies from a non-approved catalog. *Id*. at ¶ 7.[6] Accordingly, Leydig denied the request. *Id*. Leydig avers that in interpreting the policies of the prison "it made no sense to allow an inmate to purchase an item (*i.e*. paintbrushes) that he [was] only allowed to physically possess in a class (*i.e*. advanced art class) in which he [was] not enrolled, and which he [was] unlikely to be enrolled in the near future." *Id*. ¶ 11.

---

[5] Plaintiff has provided an invoice from Dick Blick Art Materials indicating, among other things, that a "Value Pack Brush Set" was shipped to Warner on July 22, 2016. ECF 26-1 at 3.

[6] Plaintiff argues that Leydig's denial of the order was improper as he had previously been permitted to order from this vendor. ECF 26 at 3; ECF 26-1 at 19 (NASCO order dated April 4, 2014); ECF 26-1 at 20 (undated catalog order form to Walkenhorst, which was not allowed as ordering period had closed).

Sires avers that he investigated ARP NBCI-1183-16 and recommended that Nines affirm Leydig's interpretation and deny the ARP. ECF 21-5, ¶¶ 6, 8. Further, Sires avers that his recommendation was based on his interpretation of the institutional policies. *Id.*, ¶ 11; *see also* ECF 21-2 at 5-8 (ARP Case Summary NBCI-1183-16, prepared by Sires). Sires indicates that his "recommendation was based on the practical result that it made no sense to allow an inmate to purchase an item (*i.e.* paintbrushes) that he [was] only allowed to physically possess in a class (*i.e.* advanced art class) in which he [was] not enrolled, and which he [was] unlikely to be enrolled in the near future." ECF 21-5, ¶ 11.[7]

Defendant Nines avers that he agreed with the staff recommendation regarding the denial of ARP NBCI-1183-16, However, after the Commissioner reversed the determination and plaintiff completed his disciplinary segregation term, paintbrushes were purchased for plaintiff and placed in storage.[8] ECF 29-1 (Nines Decl.), ¶¶ 5-11; *see also* ECF 21-5, ¶¶9-10; ECF 21-6, ¶ 10-11; ECF 21-4 (Beeman Decl.), ¶ 7.

Nines, Sires, and Leydig each aver that the decision to deny ARP NBCI-1183-16 was based on the interpretation of institutional policies and the facts of plaintiff's claim, not on intentional vindictiveness. ECF 29-1, ¶ 10; ECF 21-5, ¶ 11; ECF 21-6, ¶ 11.

Beeman has no recollection of denying plaintiff the opportunity to buy paintbrushes or other art supplies. ECF 21-4 (Beeman Decl.), ¶ 5. He states that in 2015, he advised plaintiff he could not store paintbrushes in his cell and plaintiff could only access paintbrushes by requesting

---

[7] Neither Leydig nor Sires explains why they did not believe plaintiff would be able to enroll in the class in the future. On the other hand, there is no evidence that plaintiff has ever enrolled in such an art class.

[8] Plaintiff has provided an "Information Report Form" dated July 6, 2017, which confirms that the paintbrushes were issued to him and placed in the "North Gym storage area." ECF 26-1 at 11.

access from the recreation officer or if he was enrolled in an art class. *Id*. Beeman denies intentionally taking any action to deny plaintiff a constitutional right. *Id*. ¶ 6. In July of 2017, Beeman arranged for five paintbrushes to be issued to plaintiff, which were placed in storage. ECF 21-2 at 50.

Nines, Sires, Leydig and Beeman each deny that plaintiff has been treated differently than other similarly situated inmates. ECF 29-1, ¶ 10; ECF 21-4, ¶ 8; ECF 21-5, ¶ 12; ECF 21-6, ¶ 12.

## II. Standard of Review

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed. App'x. 220, 222 (4th Cir. 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d)

may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[9]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv.*

---

[9] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 Fed. App'x at 222 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

9

*Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F.Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F.Supp. 2d 414, 420 (D. Md. 2006).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id*. (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

Plaintiff has not sought discovery. And, I am satisfied that it is appropriate to address defendant's Motion as one for summary judgment, because it will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most

favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III. Discussion

Plaintiff alleges that defendants deprived him of his right to Equal Protection under the 14th Amendment. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citation omitted). However, differential treatment alone does not state an equal protection claim without a showing that the inmate was similarly situated to those treated differently. *See Moss v. Clark,* 886 F.2d 686, 691 (4th Cir. 1989).

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). To survive a motion for summary judgment, plaintiff must provide specific, non-conclusory allegations that demonstrate an improper motivation. *Williams v. Hansen*, 326 F. 3d 569, 584 (4th Cir. 2003). Once plaintiff has made this showing, the court then determines whether the disparate treatment can be justified. *See*, *e.g.*, *City of Cleburne*, 473 U.S. at 439-40.

Because of the special considerations regarding the running of penal institutions and the limitation of many privileges and rights of prisoners due to their incarceration, a "prison

regulation [that] impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Morrison* 239 F.3d at 654-55 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987))(other citations omitted). In short, the policies in place must meet a test of reasonableness. *Turner v. Safely*, 482 U.S. 78, (1987).

Plaintiff's claim that he was treated differently than other Max II inmates is without support. Plaintiff's claim that other Max II inmates received paintbrushes is belied by the record. Gurtler investigated plaintiff's claim and could find no evidence that the inmates referenced by plaintiff had been allowed to purchase and possess paintbrushes. Similarly, the affidavits submitted by plaintiff fail to support his claim. Although the affidavits indicate that the other inmates ordered art supplies, none of the inmates, other than Warner, aver that they ordered paintbrushes. Defendants agree that Warner ordered paintbrushes but he was not permitted to possess them, as they were confiscated as contraband. The denial of plaintiff's other requested art materials was occasioned by his ordering outside of the specified time and/or attempting to order from a vendor that was no longer authorized.

Additionally, plaintiff has failed to put forth any evidence of discriminatory intent. Defendants specifically deny acting in a vindictive manner toward plaintiff and aver that their conduct was occasioned by their reasonable efforts to interpret various correctional policies. It is apparent that defendants misinterpreted the policies regarding plaintiff's authority to purchase and possess paintbrushes. Their mistaken belief was corrected through utilization of the administrative process. The process worked as it was designed to, and once plaintiff was released from disciplinary segregation he was provided paintbrushes. The denials of plaintiff's request for other art materials were occasioned by his attempt to utilize an unauthorized vendor.

To be sure, plaintiff's receipt of the paintbrushes was delayed, and he was no doubt

frustrated by the process. But, he has failed to refute the claim that the delay in his receipt of paintbrushes was anything more than a mistake. There is no evidence that defendants acted intentionally or purposefully in order to discriminate against him. Plaintiff's claims that the denial of paintbrushes was intentional and vindictive are conclusory and not supported by any evidence.

I need not consider whether the policies in place regarding the ordering of art supplies are reasonable, as plaintiff has failed to demonstrate that he was intentionally treated differently than other similarly situated inmates or that the acts of defendants were intentional or discriminatory. Defendants are entitled to summary judgment in their favor.[10]

A separate Order follows.

August 15, 2018 /s/
Date Ellen L. Hollander
United States District Judge

---

[10] The court need not address defendants' immunity defenses.